## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 23-40810-169 |
| | § | |
| **Deborah Dorlaque,** | § | Chapter 13 |
| | § | |
| Debtor. | § | Re:   Doc. Nos.  28, 29, 39, 41 |
| | § |        Claim 5-4 |
| | § | |
| | § | FOR PUBLICATION. |

## <u>OPINION AND ORDER ON AMENDED OBJECTION TO CLAIM</u>

This matter arose following the sale of certain real property to Deborah Dorlaque (the "<u>Debtor</u>") and Paul Dorlaque,[1] her spouse, by the Revocable Living Trust Agreement of John G. Dorlaque (the "<u>Trust</u>"), and involves a dispute regarding the terms and effect of the documents central to that sale. After Paul Dorlaque's death and a purported default, the Trust instituted foreclosure proceedings against the property, causing the Debtor to file this bankruptcy case. The Debtor objected to the enforceability of the Trust's interest in the property and the amount of the Trust's claim against the property as of the date the Debtor filed this case. This Court held evidentiary hearings on these issues on November 8, 2023 and February 14, 2024. D.E. 11/8/23 (comprising link to audio recording of November 8, 2023 hearing); D.E 2/14/24 (comprising link to audio record of February 14, 2024 hearing).[2] This Opinion and Order comprises this Court's ruling upon the issues about the allowance and amount of the Trust's claim.

---

[1] This Court uses Dorlaque family members' full names in this Opinion and Order to avoid confusion and ensure clarity of the record.

[2] References to "Doc. No. ___" in this Opinion and Order are to documents entered upon this Court's docket in this bankruptcy case and citations to page numbers in those references are to the system-generated pagination for documents entered upon this Court's docket. References to "D.E. __/__/__" in this Order are to text entries entered upon this Court's docket in the bankruptcy case. References to "Stip. Ex. ___" in this Order are to the documents numbered and listed in the parties'

## I.      Background

### A.      Underlying Transaction

In February 2011, John Dorlaque executed the Revocable Living Trust Agreement of John G. Dorlaque (the "Trust Agreement"), creating the Trust, and transferred certain property, including real property located at 2819 Angelo Ave, Saint Louis, MO 63114 (the "Property"), to the Trust.  Stip. Ex. 5; D.E. 11/8/23.  John Dorlaque passed away in September 2012.  Stip. Ex. 7.

The Trust held the Property until May 15, 2018, when Mark Dorlaque, as the then-successor trustee of the Trust, executed a Trustee's Deed conveying the Property to his brother, Paul Dorlaque and to Paul's spouse, the Debtor, "as husband and wife."  Doc. No. 32 at 1, ¶ 3; Stip. Ex. 3.  That same day, as part of the same transaction, Paul Dorlaque executed a Real Estate Sale Contract (the "Contract"), a Promissory Note (the "Note"), and a Deed of Trust (the "Deed of Trust") to document the Property's sale.  Doc. No. 32 at 1, ¶¶ 1, 2, 4; Stip. Ex. 1 at 4, 2 at 2-3, 4 at 11.  The Debtor executed the Contract and the Deed of Trust, but not the Note.  Doc. No. 32 at 1, ¶¶ 1, 2, 4; Stip. Ex. 1 at 4, 2 at 2-3, 4 at 11.

The Contract provides that it was made by and between the Trust, as "Seller," and Paul Dorlaque, as "Buyer," and bears Paul Dorlaque's signature and the Debtor's signature affirming that she assented to the Contract.  Stip. Ex. 1 at 1, 4.  The Contract states that the Buyer agreed to pay a purchase price of $50,815.41 for the Property, less $8,750.00 credited to that price in exchange for Paul Dorlaque's disclaimer and waiver of any right to future distributions from the Trust.  Id. at 1-2.  The Contract further provides that the Buyer agreed to pay the purchase price

---

Joint Stipulation of Exhibits, Doc. No. 33, and subsequently admitted into evidence at the November 8, 2023 evidentiary hearing on this matter; citations to page numbers in those references are to the pagination provided by the parties in each stipulated exhibit.  This Court uses these references to enhance the clarity of this Opinion and Order and the record.

through a promissory note secured by a deed of trust against the Property. Id. at 1, ¶ 2. Paul Dorlaque's signature and the Debtor's signature appear at the end of the document, immediately above Notary Public Josh Venverloh's ("Mr. Venverloh's") notarial acknowledgment certifying that that the Contract was "subscribed and sworn to before me" on May 15, 2018, Mr. Venverloh's signature, and a stamp of his official notary seal.[3] Id. at 4; Doc. No. 32 at 2, ¶ 5.

The Note's first page provides that "Paul Dorlaque and Deborah Dorlaque, husband and wife (collectively, "Maker"), hereby jointly and severally promise to pay" the principal sum of $42,065.41, plus interest accruing at 6.5% per annum, until the principal balance becomes due. Stip. Ex. 2 at 1. The Note requires monthly payments of principal and interest totaling $265.88 beginning on June 1, 2018, and continuing until fully paid, "except that the final payment of principal and interest, if not sooner paid, shall be due on the 1st day of July 2023." Id. The Note states that it is secured by a Deed of Trust entered into on May 15, 2018, by and between the Maker and the Trust. Id. The Note then defines the Maker's obligations and identifies events of default, including any failure to pay real estate taxes, maintain insurance, or the "occurrence of any Event of Default under the [Deed of Trust]", and requires the Maker to pay "all of [the Trust's] costs and expenses, including reasonable attorneys' fees and court costs, incurred or paid by [the Trust] in connection with (i) enforcing or attempting to enforce any of [the Trust's] rights and remedies under an Event of Default . . . and (ii) collecting amounts due under this Note." Id. at 2. The

---

[3] In this Opinion and Order, this Court uses the term "acknowledgment" to identify the portion of a referenced document that bears a notary's official signature and seal and recites the language statutorily required in a Missouri notarial certificate or, in the case of the Deed of Trust, a Missouri certificate of acknowledgment. The Missouri statutes governing notarial acts require a notarial certificate in many situations, but the Missouri statutes governing real property transactions require a certificate of acknowledgment. Compare MO. REV. STAT. § 442.210 (reciting the forms of certificate of acknowledgment for real estate conveyances), with MO. REV. STAT. § 486.750 (providing the form of notarial certificate applicable to non-real estate transactions).

Note's second page states "[s]igned and delivered in St. Louis, Missouri by Maker as of the date first above written", followed by Paul Dorlaque's signature at the bottom of the page.  Id. at 2. The top of the Note's third page includes Paul Dorlaque's preprinted name, immediately followed by "[s]ubscribed and sworn to before me this 15th day of May 2018", Mr. Venverloh's signature, and a stamp of his official notary seal.  Id. at 3.  A handwritten notation reading "notary for signature on previous page of document" appears next to the notarial seal.  Id.

The Deed of Trust provides that it "is made effective as of May 15, 2018, by Paul Dorlaque and Deborah Dorlaque, husband and wife . . . (collectively, "Grantor")" and that they grant, sell, convey and warrant the Property to the Trust in consideration of the debt owed under the Note. Stip. Ex. 4 at 3.  The Deed of Trust provides that it is "given as security for the performance of the covenants contained in [the] Deed of Trust, and as security for the payment of the balance due under [the Note], incorporated as part of the [Deed of Trust] by reference."  Id.  Among other things, the Deed of Trust requires that the Grantor make all payments due on the Note, timely pay all taxes levied or assessed upon the Property, and maintain current insurance on the Property.  Id. at 3-4, ¶¶ 2-4.  The Deed of Trust states that if the Grantor fails to perform the Deed of Trust's covenants, then the Trust may take necessary actions to protect its interest in the Property and the expense of any action becomes an additional indebtedness secured by the Deed of Trust on the Property.  Id. at 5, ¶ 7.  The last page of the Deed of Trust states "[i]ntending to be fully bound, Grantor has executed this Deed of Trust the day and year first above written", followed by the preprinted label "Grantor" next to each of Paul Dorlaque's signature and the Debtor's signature and with each signature immediately above the signer's preprinted name.  Id. at 11.  Mr. Venverloh's notarial acknowledgment appears below the signatures, identifying that Paul Dorlaque and the Debtor executed the Deed of Trust before him on May 15, 2018.  Id.

4

The Trust received monthly payments on the Note for a period of years after the parties accomplished the real estate transaction. D.E. 11/8/23. In November 2020, Paul Dorlaque passed away. Doc. No. 20 at 22. In June of 2021, Mark Dorlaque passed away, Stip. Ex. 6, and Fredrick Dorlaque became successor trustee under the Trust by operation of the Trust Agreement (the "Trustee"). Stip. Ex. 5 at 11, Doc. No. 32 at 2, ¶ 6.

The Debtor failed to pay the real estate taxes due by December 31, 2021 on the Property for the 2021 tax year. Doc. No. 32 at 2, ¶ 9. On December 22, 2022, the Trust sent a Notice of Default/Right to Cure to the Debtor, informing her that she was in default under the Note and Deed of Trust for failing to pay those taxes. Doc. No. 20 at 25-26. At that time, the Trust began to add legal fees to the debt owed on the Note. Claim No. 5-4 at 6. The Debtor then failed to pay the 2022 real estate taxes for the Property that were due by December 31, 2022, Doc. No. 32 at 2, ¶ 9, and on February 24, 2023, the Trust notified the Debtor that the Trust would conduct a foreclosure sale of the Property on March 21, 2023. Doc. No. 20 at 27.

### B.   Procedural History

On March 8, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for bankruptcy relief (the "Petition"), docketed as case number 23-40810-169 (the "Case"), in the United States Bankruptcy Court for the Eastern District of Missouri Eastern Division (this "Court"). Doc. No. 1. The Debtor elected to proceed under Chapter 13 of the Bankruptcy Code (the "Code" or the "Bankruptcy Code"). Id.

The Petition and the Debtor's bankruptcy schedules reflect that the Debtor uses the Property as her principal residence. Doc. No. 1 at 2, item 5; Doc. No. 1 at 10. The Debtor's Schedule A/B: Property (Official Form 106A/B) ("Schedule A/B") valued the Property at $80,000.

5

Doc. No. 1 at 10, item 1.1.[4]  On Schedule A/B, the Debtor asserted that the "sum due to pay the note in full is $1,063.52." Id.  The Debtor's Schedule D: Creditors Who Have Claims Secured By Property (Official Form 106D) listed a disputed secured claim held by "Fredrick Dorlaque as Trustee of the Revocable Living Trust John G. Dorlaque" secured by a deed of trust in the amount of $39,242.18.  Id. at 21, item 2.2.

On April 19, 2023, the Trust timely filed its original Proof of Claim, Claim No. 5-1, followed by an Amended Proof of Claim (the "First Amended Claim"), based on the Note and the Deed of Trust, and allegedly secured by the Property.  Claim No. 5-2 at 2.  The First Amended Claim asserted a total claim amount of $50,277,55, comprised of principal due on the Note in the amount of $39,219.18 and additional pre-petition attorney's fees and expenses totaling $11,058.56.  Claim No. 5-2 at 2, 4.  The Amended Claim included attachments that consisted of copies of the Note, Deed of Trust, and an Official Form 410A containing a payment history for the Property. Id.

On June 28, 2023, the Debtor timely filed an Objection to Claim (the "Claim Objection"), regarding the First Amended Claim.  Doc. No. 18.  The Debtor filed a Memorandum of Law in Support of Objection to Claim on June 30, 2023, Doc. No. 19, followed by an Amended Memorandum of Law in Support of Objection to Claim on July 5, 2023.  Doc. No. 20.  The Claim Objection and Amended Memorandum of Law in Support of Objection to Claim argue that the Note and Deed of Trust failed to grant the Trust a valid lien against the Property and that the Trust claimed an unreasonable amount of attorney's fees that "should be limited to $1,900.00 in attorney's fees and actual costs incurred."  Doc. No. 20 at 6-7, 9.

---

[4] Shortly before the November 8, 2023 hearing on this matter, the Debtor filed an Amended Schedule A/B that lists the Property's value at $61,000.00 based on a post-petition appraisal.  Doc. No. 42 at 1.

On July 6, 2023, this Court held an initial hearing on the Claim Objection. D.E. 7/6/23. The Debtor and the Trust appeared by counsel and presented argument about the parties' disputes about the effectiveness of the Note and Deed of Trust, the balance due under those documents, and the reasonableness of the Trust's pre-petition attorney's fees. Id. This Court continued the matter to August 31, 2023, and announced a briefing schedule to permit the parties to elucidate their positions. Id. On July 10, 2023, the Trust amended its proof of claim to attach a copy of the Trust Agreement, as well as the previously filed copies of the Note, Deed of Trust, and an Official Form 410A (the "Second Amended Claim"). Claim No. 5-3 at 21-40.

On July 29, 2023, the Debtor filed an Amended Objection to Claim, Doc. No. 22, and a Second Amended Memorandum of Law in Support of Objection to Claim (collectively, the "Amended Claim Objection"). Doc. No. 23. On August 18, 2023, the Trust filed its Response in Opposition to Objection to Claim. Doc. No. 25. On August 28, 2023, the Debtor filed a Reply to the Trust's Response in Opposition to Objection to Claim. Doc. No. 26.

On August 31, 2023, this Court held a continued status hearing on the Amended Claim Objection. D.E. 8/31/2023. Following argument from both parties' counsel, this Court set the matter for an evidentiary hearing on November 8, 2023, Id., and on September 8, 2023, this Court entered its Scheduling Order setting deadlines related to the November 8, 2023 hearing. Doc. No. 30. The Parties timely filed their Joint Stipulation of Uncontested Facts (the "Stipulated Facts"), Doc. No. 32, and their Joint Stipulation of Exhibits, Doc. No. 33, pursuant to that Order. The Trust then timely filed its Hearing Brief, Doc. No. 34, and proposed witness and exhibit lists, Doc. No. 35, and the Debtor timely filed her Hearing Brief, Doc. No. 37,[5] and proposed witness and exhibit

---

[5] The Debtor's Hearing Brief states that it "adopts by reference, pursuant to Fed. R. Civ. P. 10(c), facts previously pled in her Amended Objection to Claim (Doc # 22), Second Amended Memorandum of Law in Support of Objection to Claim (Doc # 23) and Debtor's Reply to the

lists.  Doc. No. 36.  Concurrent with filing its Hearing Brief, the Trust provided this Court with a copy of the invoices and documents that it believed supported its claim for attorney's fees for *in camera* review as a proposed exhibit, but the Trust failed to provide the Debtor with those or any other documents, redacted or otherwise, to substantiate the amount of the Trust's claimed pre-petition attorney's fees.

The Trust's Hearing Brief and Debtor's Hearing Brief reflect that the parties dispute multiple issues related to the Amended Claim Objection, but those disputes involve four primary and interconnected issues.  Based on the parties' briefing, this Court frames those issues as (1) the validity of Paul Dorlaque's signature on the Note; (2) the Note's payment terms and its effects; (3) the enforceability of the Deed of Trust against the Property and the Note against the Debtor; and (4) the availability and reasonableness of the Trust's asserted pre-petition claim for attorney's fees.  See Doc. Nos. 34, 37.

>C.    *Evidentiary Hearings*

On November 8, 2023, this Court held the scheduled evidentiary hearing on the Amended Claim Objection (the "November 8 Hearing").  D.E. 11/8/23.  At that hearing, the Trust appeared through the Trustee and appeared by counsel.  Id.  The Debtor appeared in person and by counsel.

---

Trust's Response in Opposition to Objection to Claim (Doc # 26)."  Doc. No. 37 at 2.  Generally, amendments to pleadings supersede previous filings and amendments, but Federal Rule of Civil Procedure 10(c) permits a party to incorporate previous exhibits and statements by specific reference in later pleadings.  See FED. R. CIV. P. 10(c).  Law in the Eighth Circuit requires incorporation of prior pleadings by direct and explicit references to specific statements within those pleadings.  See Fanning v. Potter, 614 F.3d 845, 851 (8th Cir. 2010); Shelter Mut. Ins. Co. v. Pub. Water Supply Dist. No. 7, 747 F.2d 1195, 1198 (8th Cir. 1984).  The Debtor's attempt to incorporate her previous pleadings into the Hearing Brief without any specific references or citations fails to revive arguments that the Debtor failed to address in the Hearing Brief, at either the November 8, 2023 hearing or the February 14, 2024 hearing in this matter, or in the papers the Debtor filed between the dates of those hearings.

Id.  This Court heard argument and received testimony from the Debtor, Mr. Venverloh, and the Trustee.  D.E. 11/8/23.  This Court admitted Stipulated Exhibits 1-10 and the Trust's Exhibits 9, 10 and 11 into evidence.  Id., see also Doc. No. 35 (identifying the Trust's proposed exhibits for the November 8 Hearing).

At the close of the November 8 Hearing, the Trust moved to admit a business records affidavit for what it described as a set of invoices and other documents supporting the portion of the Amended Claim comprising the Trust's claimed pre-petition attorney's fees.  D.E. 11/8/23.  This Court denied the request to admit that affidavit into evidence because the Trust had not provided the Debtor with a copy of that affidavit, the documents attached to it, or any other documents supporting the reasonableness of the Trust's attorney's fees.  Id.  This Court continued the hearing and directed the Trust to file a copy of the invoices or other documentary support allegedly showing the reasonableness of its pre-petition attorney's fees—redacted if necessary to protect attorney-client privilege—with this Court.  Id.  This Court set deadlines for the Trust to file those documents and reset the deadlines for the parties to file any post-hearing briefs or proposed findings of fact and conclusions of law.  Id.; see Doc. No. 47, 58, 59 (comprising orders scheduling the post-hearing deadlines).

On November 28, 2023, the Trust filed its proposed Exhibit 12, consisting of a copy of redacted invoices that the Trust asserts support its claim for attorney's fees.  Doc. No. 53.  On December 8, the Debtor timely filed a Response in Opposition and Objection to Admission of Exhibit 12 (the "Attorney Fee Objection"), Doc. No. 63, and the Debtor's Proposed Findings of Fact and Conclusions of Law.  Doc. No. 62.  On December 15, the Trust timely filed its Proposed Findings of Fact and Conclusions of Law, Doc. No. 64, and its Reply in Support of and Response to Debtor's Objection to Admission of Creditor's Exhibit 12 (the "Attorney Fee Response").  Doc.

No. 65.  After reviewing the Attorney Fee Objection and Attorney Fee Response and dealing with other scheduling issues in this matter, this Court set an evidentiary hearing regarding the Trust's claim for attorney's fees for February 14, 2024.  Doc. No. 66.

On February 12, 2024, the Debtor filed a Motion in Limine arguing that this Court should sanction the Trust by prohibiting it from presenting any testimony regarding the redacted portions of the Trust's Exhibit 12.  Doc. No. 75.  On February 13, 2024, the Trust filed an amendment to its proof of claim (the "Third Amended Claim").  Claim No. 5-4.  The Third Amended Claim asserted the same claim for principal and interest arising from the Note and Deed of Trust as the Trust's previous proofs of claim, but reduced the Trust's request for pre-petition attorney's fees and legal costs to $2,435.64, comprising $663.00 in legal costs and $1,772.64 in legal expenses incurred between December 2022 and March 2023.  Id. at 5-6.  The Third Amended Claim included an amended Official Form 410A showing the recalculation of the pre-petition fees and costs, but did not provide any documentation or support for the claimed amount of pre-petition attorney's fees and costs.  Id.

On February 14, 2024, this Court held the continued evidentiary hearing (the "February 14 Hearing").  D.E. 2/14/24.  At that hearing, this Court denied the Debtor's Motion in Limine because it lacked merit and the Debtor's cited authority did not authorize the relief requested by the Debtor.  Id.; see also Doc. No. 83 (comprising this Court's order denying the Motion in Limine for the reasons stated on the record at the February 14 Hearing).  The Debtor appeared at that hearing by counsel and the Trust appeared by counsel.  D.E. 2/14/24.  Neither party elected to present testimony or request admission of any evidence at that time.  Id.

Both parties presented argument.  Id.  The Trust argued that its Third Amended Claim sought allowance of fewer than $1,900.00 in attorney's fees and that this amount comported with

the Debtor's previously assertion that $1,900.00 was a reasonable sum for pre-bankruptcy consumer foreclosure legal services. Id. The Debtor argued that the Trust failed to satisfy its burden of proof on the issue of attorney's fees, that no amount of attorney's fees was reasonable in this matter, and that her statements that $1,900.00 comprised a reasonable charge for a consumer foreclosure meant only that those fees would be reasonable in other cases involving pre-petition efforts to foreclose—but not this Case. Id. The Trust responded that the Debtor's statement that a $1,900.00 attorney's fee would be reasonable comprised a judicial admission binding on the Debtor because she made the statements within documents filed in support of her claim objection papers. Id. At the close of that hearing, this Court took the Debtor's Amended Claim Objection under advisement. Id.

## II.      Jurisdiction and Venue

This Court possesses jurisdiction over these matters pursuant to 28 U.S.C. §§ 151, 157(a) and 1334 and Local Rule 9.01(B)(1) of the United States District Court for the Eastern District of Missouri. Venue for this matter rests properly in the Eastern District of Missouri under 28 U.S.C. § 1409. This matter comprises a core proceeding under 28 U.S.C. § 157(b)(1), (b)(2)(B), and (b)(2)(K).

## III.     Governing Law

### A.      Law Governing Claim Objections

The Bankruptcy Code provides that each of a debtor's creditors may file a proof of claim in the debtor's bankruptcy case to provide proof of the creditor's right to payment. See 11 U.S.C. §§ 101(5)(a); 502(a); Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 449 (2007). Courts deem filed proofs of claim "allowed" unless the debtor or a party in interest objects. 11 U.S.C. § 502(a). After the debtor or a party in interest files a claim objection, the

11

bankruptcy court determines the dollar amount of the claim after a hearing and allows the claim unless it "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). Absent evidence that one of the enumerated exceptions listed in section 502(b) of the Bankruptcy Code applies, a court must allow the claim. Melikian Enter, LLLP v. McCormick, 863 F.3d 802, 806–07 (8th Cir. 2017).

A proof of claim filed in accordance with the Federal Rules of Bankruptcy Procedure (each a "Rule") comprises "prima facie evidence of the validity and the amount of the claim." FED. R. BANKR. P. 3001(f); see In re Dove-Nation, 318 B.R. 147, 151 (B.A.P. 8th Cir. 2004) (explaining that, under Rule 3001(c), any claim based on a writing must contain documentation supporting the claimant's interest in property or right to payment and that the presence of those supporting documents entitles the claim to prima facie validity under Rule 3001(f)). If a proof of claim receives prima facie validity, then the objecting party bears the burden to prove by a preponderance of the evidence that the claim fits within one of the exceptions set out in section 502(b) of the Bankruptcy Code. In re AFY, Inc., 463 B.R. 483, 488 (B.A.P. 8th Cir. 2012); Dove-Nation, 318 B.R. at 152. If the objecting party presents substantial evidence contravening a claim's presumed validity, the burden of proof then shifts to the creditor to prove the claim's validity and amount, again by a preponderance of the evidence. Dove-Nation, 318 B.R. at 152. The mere filing of a claim objection fails to overcome a claim's presumed validity and fails to shift the burden of proof to the creditor; the objector must produce sufficient evidence to support the objection. See In re Waterman, 248 B.R. 567, 571 (B.A.P. 8th Cir. 2000) ("[The Creditor] filed a proper Proof of Claim and attached the supporting documentation as required by Rule 3001(c) and (d), so under Rule 3001(f), the Proof of Claim was prima facie evidence of the validity and amount of her claim. That being the case, Debtor was required to provide substantive evidence rebutting the claim.").

B.     *Missouri Law Governing the Enforceability of a Deed of Trust*

"[C]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, typically state law, subject to any qualifying or contrary provisions of the Bankruptcy Code." Travelers, 549 U.S. at 450.  Thus, bankruptcy courts often consult state law to determine a claim's validity because state law determines many pre-petition obligations' enforceability.  Melikian, 863 F.3d at 806–07.  This Court turns to Missouri law to determine the enforceability of the Note and the Deed of Trust as they pertain to the Trust's Third Amended Claim.

Missouri statutes require all deeds or other conveyances of land to be subscribed by the party conveying its interest, acknowledged by them, and properly recorded.  MO. REV. STAT. §§ 442.020; 442.030.  Missouri law requires that a deed or conveying instrument bear the grantor's/s' signature, including the signatures of both spouses if the conveyance involves property both own, and further requires that the instrument contain an acknowledgment by a notary or other official averring that the persons who signed the instrument were personally known to the notary or proved to be the persons whose names appear subscribed to the instrument.  MO. REV. STAT. § 442.130 (detailing the requirements for proper execution of a deed); MO. REV. STAT. § 442.210 (listing the required contents of an acknowledgment).  In addition to the contents required in a real property acknowledgment, all notarial acknowledgments must contain or state: (1) the notary's official signature; (2) an impression of the notary's official seal; (3) the venue of the notarial act, including the name of the state and county; (4) the date of the notarial act; and (5) the specific facts and particulars attested to through the notarial act.  MO. REV. STAT. § 486.740.1.  Under Missouri law, an acknowledgment requires substantial, but not perfect, compliance.  See In re Jennings, 206 B.R. 954, 957 (Bankr. W.D. Mo. 1997); see Mathews v. O'Donnell, 233 S.W. 451, 456 (Mo. 1921)

("The law touching acknowledgments requires no more than a substantial compliance with its terms.").

Missouri law presumes that a married couple owns real property in a tenancy by the entirety. Ethridge v. TierOne Bank, 226 S.W.3d 127, 132 (Mo. banc 2007) (citing Bradley v. Missouri Pac. Ry. Co., 4 S.W. 427, 428 (Mo. 1887)). The unique nature of an entireties estate means that spouses own property as a single unit, without any divisible part or share. Ethridge, 226 S.W.3d at 131. As a result, the signature of only one spouse on a deed of trust fails to convey any interest in property, and any attempt by one spouse to convey their sole interest in entireties property is void unless the other spouse joins in the conveyance. See id. The conveyance of both spouses' jointly owned or entireties property through a jointly acknowledged deed binds them both to the covenants expressly or impliedly contained in that instrument. MO. REV. STAT. § 442.030. Moreover, Missouri law emphasizes that a deed of trust or other conveying instrument must clearly define the identity and role of a conveying spouse. See MO. REV. STAT. § 442.210.1-.4 (requiring a description of a "married woman" as a "wife" in an acknowledgment to effectuate spouses' joint transfer of real estate).

Courts initially evaluate the existence of an ambiguity within a contract, including a promissory note or deed of trust, by looking within the document's four corners. Ethridge, 226 S.W.3d at 131. Courts may not stretch beyond an agreement's language unless the agreement contains provisions that appear deceitful, indistinct, or uncertain in their meaning and those provisions remain ambiguous after considering the agreement's language as a whole. Johnson v. Nationstar Mortg., LLC, 470 S.W.3d 754, 760 (Mo. Ct. App. 2015). If that occurs, courts examine whether a deed of trust and other simultaneously executed contractual agreements demonstrate the parties' intent to create a valid lien or to convey an interest in property when disputes arise

concerning a property conveyance's effectiveness.  Ethridge, 226 S.W.3d at 131.  Loan transactions traditionally involve multiple contemporaneously executed and related agreements, including a promissory note secured by a deed of trust, and courts construe those agreements together when evaluating the parties' intent.  Richard v. Wells Fargo Bank, N.A., 418 S.W.3d 468, 473 (Mo. Ct. App. 2013) (collecting cases).  Wherever possible, courts harmonize related agreements' language to address potential ambiguities before considering any parol evidence.  Id.  However, a contract is not ambiguous merely because the parties dispute its construction.  Id.

## IV.    Analysis

The Trust filed the Third Amended Claim one day before the February 14 Hearing.  Claim No. 5-4.  However, other than the Third Amended Claim's reduction of claimed pre-petition attorney's fees, the Third Amended Claim asserts the same claim amount and basis and contains the same evidentiary support as the previous versions of the Trust's claim.  Compare Claim Nos. 5-2 and 5-3 and 5-4.  Accordingly, this Court's discussion of the Trust's claim pertains to the Third Amended Claim because it supersedes the Trust's previously filed proofs of claim.

The Third Amended Claim includes the Note, Deed of Trust, Trust Agreement, Official Form 410A reflecting the payment history on the Note, and the death certificates of John Dorlaque and Mark Dorlaque.[6]  Claim No. 5-4 at 5-42.  Thus, the Trust provided proof of its asserted interest in the Property as required by Rule 3001(c) and, consequently, the Third Amended Claim and attached documents constitute prima facie evidence of that claim's validity and amount.  FED. R. BANKR. P. 3001(c), (f).  As the party objecting to the Third Amended Claim, the Debtor bears the burden of proving that the Trust possesses an unenforceable claim under Missouri law and the

---

[6] This Court notes that the death certificates of John Dorlaque and Mark Dorlaque comprised stipulated exhibits admitted into evidence at the November 8 Hearing.  Doc. No. 33 at 1; D.E. 11/8/23.

Debtor must present substantial evidence that the Trust holds an unenforceable claim.  11 U.S.C. § 506(b), FED. R. BANKR. P. 3001(f).  Accordingly, the Debtor must present evidence to support the asserted arguments regarding the validity of Paul Dorlaque's signature on the Note; the existence of any ambiguity regarding the Note's payment terms; and the validity and effectiveness of Deed of Trust against the Debtor.  But because the Trust failed to attach documentary support to demonstrate the reasonableness or amount of its claimed pre-petition attorney's fees to the Third Amended Claim, it bears the burden of proving not only its entitlement to attorney's fees under the applicable documents, but also the reasonableness of the fee amounts claimed.

*A.     Validity of Paul Dorlaque's Signature*

This Court begins by addressing the Debtor's argument concerning the validity of Paul Dorlaque's signature on the Note.  Throughout this litigation, the Debtor argued that Paul Dorlaque's signatures on the Note and Deed of Trust differ.  See Doc. Nos. 17, 18, 19, 20, 22, 37; see also D.E. 7/6/23.  The Debtor asserts that Paul Dorlaque did not sign the Note and the difference between his signatures on the Note and Deed of Trust "tips the balance of probabilities in favor of Debtor's understanding of the Note."  Doc. No. 23 at 10.  This argument fails because the Debtor never produced any evidence of fraud, post-execution alteration, or any other basis for this Court to find that Paul Dorlaque did not sign the Note.  See FED. R. BANKR. P. 3001(f); Dove-Nation, 318 B.R. at 152.  Moreover, even if this Court were to agree that Paul Dorlaque's signatures on the Note and Deed of Trust differ, Missouri law creates a rebuttable presumption of the facts contained in a notarial acknowledgment, including that the party executing an instrument appeared and signed the instrument and the Debtor failed to present evidence to overcome that presumption.

Under well-established Missouri law, courts presume the veracity of factual statements contained in a notarial acknowledgment, including assertions that a specific person appeared on the listed date and executed the referenced instrument in the notary public's presence and in the manner described in the acknowledgment.  See Wilcox v. Coons, 220 S.W.2d 15, 21 (Mo. banc 1949); Bryant v. Shinnabarger, 227 S.W. 54, 56 (Mo. 1920); Rivard v. Missouri Pac. Ry. Co., 165 S.W. 763, 768 (Mo. 1914); State, ex rel. Alexander v. Plass, 58 Mo. App. 148, 151 (Mo. 1894); see also First Methodist Church v. Berryman, 261 S.W. 73, 77 (Mo. 1924) (holding that a certificate of acknowledgment that complies with statute comprises prima facie evidence of the conveyance's execution).  The party challenging a notarial acknowledgment or the facts contained in it—including the validity of the signature preceding the acknowledgment—must provide clear and convincing evidence contradicting the facts contained in the acknowledgment.  State ex rel. Scruggs v. Packard, 201 S.W. 953, 954 (Mo. 1918); Rivard, 165 S.W. at 768.  Courts seldom discard a notarial acknowledgment and only do so upon a showing of clear and convincing evidence that the facts contained in the acknowledgment did not occur.  Futhey v. Potts, 204 S.W. 180, 181 (Mo. 1918).  Bare conclusory allegations made in opposition to a notarial acknowledgment fail to contravene an acknowledgment's presumed veracity.  Id.; Barrett v. Davis, 16 S.W. 377, 378 (Mo. 1891).

Here, the Note shows a handwritten date of May 15, 2018 on its first page, followed by the printed phrase "[s]igned and delivered in St. Louis Missouri by Maker as of the date first above written" and Paul Dorlaque's signature immediately below that phrase on the next page.  Stip. Ex. 1 at 1-2.  The Note's third page starts with Paul Dorlaque's preprinted name, followed by Mr. Venverloh's notarial acknowledgment, a handwritten date of May 15, 2018, and a handwritten notation explaining that the acknowledgment applied to the signature on the document's previous

page.  See Stip. Ex. 1 at 3.  The notarial acknowledgment on the Note appears immediately below

the signature block and reads "[s]ubscribed and sworn to before me this 15th day of May 2018",

followed by Mr. Venverloh's signature and an ink stamp of Mr. Venverloh's notarial seal.  Id.; see

also Stip. Ex. 2 at 3 (comprising Mr. Venverloh's notarial acknowledgment on the Contract, albeit

without the postscript).

During the November 8 Hearing, the Debtor appeared and testified, but she provided no

testimony or other evidence to challenge the validity of Paul Dorlaque's signature on the Note.

D.E. 11/8/23.  Then the Trust called Mr. Venverloh, who appeared and testified that the Debtor

and Paul Dorlaque appeared before him on May 15, 2018, that Paul Dorlaque signed the Note,

Contract, and Deed of Trust in his presence, and that the Debtor appeared and signed the Contract

and Deed of Trust in his presence.  Id.  Mr. Venverloh explained that he recognized the Debtor

and Paul Dorlaque as the persons identified in the Contract, Note, and Deed of Trust because they

had presented themselves to him on multiple occasions during his employment as a manager of

U.S. Bank, including other times when he notarized documents for one or both of them.  Id.  He

testified that the Debtor and Paul Dorlaque presented state-issued identification to verify their

identities when he notarized the Contract, Note, and Deed of Trust.  Id.  Mr. Venverloh then

testified that he notarized the Note, Contract, and Deed of Trust, that the dates affixed to those

documents were in his handwriting, and that he regularly wrote the execution date on any

documents he notarized.  Id.  Mr. Venverloh also testified that he notarized the Note and wrote the

handwritten notation "notary for signature on previous page of document", next to his

acknowledgment on the Note to explain that his acknowledgment appeared on the page after Paul

Dorlaque's signature because the document provided to him to notarize carried over onto a third

page.  Id.; see also Trust's Ex. 11 (containing a photographic copy of a portion of Mr. Venverloh's

notary handbook for May 15, 2018 identifying that Paul Dorlaque appeared before Mr. Venverloh for notarization of documents pertaining to the Property and signed the notary handbook).

Here, the notarial acknowledgment affixed to the Note meets the standard applicable under Missouri law.  That acknowledgment contains the signature of Mr. Venverloh, a notary; bears an impression of his notary seal; lists the venue where the acknowledgment occurred, specifically the State of Missouri and County of Saint Louis; bears the date of May 15, 2018; and certifies that the subscribing parties appeared and signed before Mr. Venverloh.  Stip. Exs. 1 at 4, 2 at 3, 4 at 11.  Moreover, this Court also finds Mr. Venverloh's testimony that Paul Dorlaque appeared before him and signed the Contract, Note, and Deed of Trust and that the Debtor appeared before him and signed the Contract and Deed of Trust credible and corroborated by Mr. Venverloh's notary public journal for May 15, 2018, identifying that Paul Dorlaque appeared before him on that date.  Trust's Ex. 11.

The Debtor never challenged any of the other notarized signatures affixed to the documents attached to the Trust's claim, but this Court's review of those signatures reflects that those signatures also satisfy Missouri's notarial acknowledgment requirements.  Therefore, based on the absence of any contradictory evidence and the presumed veracity of statements contained in the notarial acknowledgment in the Note, Contract, and Deed of Trust, this Court finds that Paul Dorlaque signed the Contract, Note, and Deed of Trust before Mr. Venverloh on May 15, 2018.  This Court further finds the Debtor appeared and signed the Contract and Deed of Trust before Mr. Venverloh on May 15, 2018.

### B.    *Ambiguity in payment terms*

The Debtor posits that ambiguities exist in the Note's payment terms and within the Deed of Trust because it incorporates those payment terms.  Doc. Nos. 22, 37.  The Debtor argues that

19

language in the Contract, Note, and Deed of Trust, and extrinsic evidence support her view that the Note contains an ambiguity within its payment terms. D.E. 11/8/23. This Court understands that the Debtor argues that extrinsic evidence shows that the parties intended that the Note required 63 payments of $265.88 to the Trust, after which the Property would be paid off with no other payments due the Trust. See Doc. No. 37 at 2-6 (arguing that the Note only required a total of $16,750.00 of payments); D.E. 11/8/23 (same). In addition, the Debtor asserts that a mathematical inaccuracy within an exhibit to the Contract calculating the Property's purchase price results in an ambiguity about the amount due under the Note and therefore this Court should consider extrinsic evidence to determine the intent of the parties. D.E. 11/8/23; Doc. No. 37.

The Trust argues that the plain terms of the Note require monthly payments of $265.88 to the Trust on the first day of each month from June 2018 through July 2023, and that those terms required a balloon payment of any unpaid principal and interests due on July 1, 2023. Doc No. 34 at 6-7. The Trust further argues that no ambiguity exists within the Note and that the exhibit to the Contract fails to create an ambiguity requiring consideration of anything other than the language contained in the Note and Deed of Trust. D.E. 11/8/23; Doc. No. 34 at 6-7. The Trust also argues that the Debtor attempts to create an ambiguity by relying on extrinsic evidence, including a memorandum by a former trustee of the Trust that identified that 63 payments were due rather than 62, without identifying any ambiguity within the language within the Note. Doc. No. 34 at 6-7.

This Court's inquiry into the existence of any ambiguity in the Note's payment terms begins and ends with the Note's language. Royal Banks v. Fridkin, 819 S.W.2d 359, 361 (Mo. banc 1991) (explaining that the parol evidence rule prohibits consideration of extrinsic evidence to determine contractual terms unless the integrated contract appears ambiguous). Parties cannot

create an ambiguity merely by disagreeing about contract interpretation; rather, ambiguities only

exist if, after reviewing contract terms, the court determines that those terms are susceptible to

honest and fair differences, including occasions where the contract's language appears duplicitous,

indistinct, or uncertain. <u>Johnson</u>, 470 S.W.3d at 760. The parol evidence rule only permits a court

to consider extrinsic evidence in situations where fraud, mutual mistake, accident, or erroneous

omission reflect that the parties possessed a different intent than that reflected by the unambiguous

contract. <u>See</u> <u>Smith Flooring, Inc. v. Pennsylvania Lumbermens Mut. Ins. Co.</u>, 713 F.3d 933, 938

(8th Cir. 2013) (applying Missouri law).

> The Note's sole provision addressing its payment terms provides:
>
> **Paul Dorlaque and Deborah Dorlaque**, husband and wife, (collectively "<u>Maker</u>")
> hereby jointly and severally promise to pay to the order of **Mark Dorlaque**, as
> **Trustee of the Revocable living Trust Agreement of John G. Dorlaque Dated
> February 21, 2011** ("<u>Holder</u>") the principal sum of forty-two thousand sixty five
> 41/100 ($42,065.41) plus interest thereon accruing at the rate of six and one-half
> percent (6.5%) per annum from the date set forth above until Maturity.
>
> Principal and interest shall be payable as follows:
>
> Two Hundred Sixty-Five and 88/100 Dollars ($265.88) on the 1st day of June,
> 2018, and a like amount on the 1st day of each month thereafter until this Note is
> fully paid, except that the final payment of principal and interest, if not sooner paid,
> shall be due on the 1st day of July 2023.

Stip. Ex. 2 at 1 (emphasis in original). The Note's plain language calls for regular payments of

$265.88 per month from June 2018 through and including June 2023, followed by a final balloon

payment of the remaining unpaid principal and interest due no later than July 1, 2023. <u>Id.</u> The

Note's repayment terms are unambiguous, and the Deed of Trust omits any specific repayment

terms. Instead, it incorporates the Note's terms, again without creating an ambiguity. <u>See</u> Stip.

Ex. 4 at 3, ¶ 1 ("This Deed of Trust is given as security for the performance of the covenants

contained in this Deed of Trust, and as security for the payment of the balance due under that

certain Promissory Note dated as of even date herewith, and incorporated as a part of this

instrument by this reference.").  Further, the Debtor failed to identify any provision within the Note that conflicts with the quoted terms and the Debtor did not identify any contradictory or confusing language in the Deed of Trust relating to those payment terms.

The Debtor argued at the November 8 Hearing that she believes that an exhibit to the Contract improperly calculated the Property's purchase price and that error created an ambiguity within the Note.  D.E. 11/8/23.  The Contract sets out the purchase price of $50,815.41, calculated in an exhibit to the Contract, minus a $8,750.00 credit for Paul Dorlaque's one-fourth Trust distribution, resulting in a sum of $42,065.41 plus interest, to be paid in the form of a promissory note for that amount.  Stip. Ex. 1 at 1, 7.  The Trust, Paul Dorlaque, and the Debtor executed the Contract, which identified the purchase price on its first page and within Exhibit B to the Contract under the header "Calculation of Paul's Share."  Stip. Ex. 1 at 1, 4, 7.  The Note provides for payment of principal in the sum of $42,065.41 plus interest, to be paid by monthly payments and a final a balloon payment, as described above.  Stip. Ex. 2 at 1.  Nothing, in the Debtor's Hearing Brief contradicts these figures or identifies how the calculation of the purchase price in the Contract, creates an ambiguity within the Note's clear payment terms.  A party may not manufacture an ambiguity by disagreeing with the plain language of a transaction's documents.  Johnson, 470 S.W.3d at 760.

The Debtor did testify at the November 8 Hearing that she understood the payment terms differently and that she had been present for the negotiations over the figures contained in the Note.  D.E. 11/8/23.  However, the Debtor provided no credible testimony that the parties intended different payment terms than those written in the Note.  Id.  Moreover, even if this Court found it credible that the Debtor understood the Note's terms differently than the Trust, this Court cannot, as the Debtor requests, look to extrinsic evidence to find that an ambiguity exists within the Note

absent any credible evidence that an exception to the parol evidence rule applies.  See Smith Flooring, Inc., 713 F.3d at 941.  The Note's terms are both clear and certain, and the Debtor presented no evidence of fraud, mutual mistake, or other grounds to apply parol evidence to interpret the Note.

Accordingly, this Court finds no ambiguity exists regarding the Note's payment terms. Because no ambiguity exists within the Note's payment terms, this Court finds that the Note required payment of $42,065.41 plus interest, comprised of monthly payments of $265.88 due on the first day of each month between June 1, 2018 and June 1, 2023, with a final balloon payment of any unpaid principal and interest due on or before July 1, 2023.

### C.   Enforceability of the Note and the Deed of Trust

The Debtor next argues that the Deed of Trust failed to pledge her interest in the Property security for the amount due under the Note, asserting that the Trust cannot enforce the Deed of Trust against the Property because the Debtor did not sign the Note.  Doc. No. 37 at 7-8.  The Debtor acknowledges signing the Deed of Trust, but claims that her signature failed to subject the Property to the Trust's lien because "the Deed of [T]rust defined Debtor[7] as the one who owed the debt and promised to make timely payment under the Note", and the Debtor has not liability under the Note.  Doc. No. 37 at 5, 7; see also Doc. Nos. 22 at 9; 26 at 2-3.  The Debtor supports her argument by asserting that Missouri law states that a spouse's signature fails to convey an interest in property if a lender inaccurately defines or identifies the capacity under which a spouse executes a deed of trust.  See Doc. No. 37 at 7.  In essence, the Debtor argues that the absence of her

---

[7] The reference to "Debtor" within this quote appears to refer to the "Borrower" under the Note, not to the moving party in this claim proceeding.

signature on the Note, combined with references to the Note and obligations to repay the Note within the Deed of Trust, renders the Deed of Trust unenforceable.  Id.

The initial unnumbered paragraph of the Deed of Trust provides that it was made by "**Paul Dorlaque and Deborah Dorlaque**, husband and wife, having a mailing address of 2819 Angelo Avenue, St. Louis, Missouri, 63114 (collectively, "Grantor"), to **Bennett S. Keller** . . . ("Trustee"), for the benefit of **Mark Dorlaque, as Trustee of [the Trust]** . . . [(]referred to herein as "Grantee")."  Stip. Ex. 4 at 3 (emphasis in original).  The Deed of Trust's next unnumbered paragraph provides that, for and in consideration of the debt owed under the Note, "which is owed by Grantor to Grantee, Grantor grants, sells, conveys and warrants to the Trustee all of the Property."  Id.  The Deed of Trust's first numbered paragraph, titled "Promissory Note", provides that:

> This Deed of Trust is given as security for the performance of the covenants contained in this Deed of Trust, and as security for the payment of the balance due under that certain Promissory Note dated as of even date herewith, and incorporated as a part of this instrument by this reference.

Id. at ¶ 1.  The final page of the Deed of Trust bears Paul Dorlaque's and the Debtor's signatures beside the preprinted word "Grantor", and each signature appears on a line immediately above their respective preprinted names.  Id. at 11.  Mr. Venverloh's notarial acknowledgment follows, certifying that Paul Dorlaque and the Debtor appeared before him and executed the Deed of Trust.  Id.

The Debtor argues that the Missouri Supreme Court's decision in Ethridge v. TierOne Bank renders the Deed of Trust entirely unenforceable because the Debtor never signed the Note and, as a result, the Deed of Trust's reference to the Note in its definition of "Grantor" made that definition inaccurate and invalidates any purported conveyance of the Debtor's interest in the Property.  Doc. No. 37 at 7.  In Ethridge, spouses refinanced their home, which they owned as tenants by the

entirely, using lender prepared loan documents.  Ethridge, 226 S.W.3d at 129.  Mr. Ethridge signed the promissory note, which listed him as the sole borrower, but Ms. Ethridge did not sign the promissory note, though she attended the signing.  Id.  Mr. Ethridge then executed the deed of trust, which identified and defined him as the sole owner of the property, defined him as the sole borrower under the deed of trust, and only included a signature line for him.  Id.  Despite the lack of a preprinted signature line and the failure to identify Ms. Ethridge as a grantor or borrower under the deed of trust, Ms. Ethridge signed the deed of trust in a blank space below Mr. Ethridge's signature.  Id. at 130.  Following Mr. Ethridge's death, the lender's successor in interest sought to hold Ms. Ethridge liable on the deed of trust.  Id.  Ms. Ethridge pursued a declaratory judgment action, seeking the deed of trust's cancelation on the grounds that it was void because it failed to name her as a grantor so that she never made any covenants of title or otherwise conveyed her interest in the property.  Id.  The trial court granted Ms. Ethridge's requested relief and the Missouri Court of Appeals affirmed, prompting the lender to appeal to the Missouri Supreme Court.  Id. at 131.

The Missouri Supreme Court proceeded to determine whether the deed of trust conveyed Ms. Ethridge's interest in the property.  Ethridge, 226 S.W.3d at 131.  The Court stated that, as with any contract, the deed of trust's language governed the inquiry into whether Ms. Ethridge conveyed her interest in the property.  Id.  The Court observed that the Ethridge deed of trust never identified Ms. Ethridge as either grantor or borrower and that the deed of trust instead incorrectly identified Mr. Ethridge as the property's sole owner.  Id. at 131-32.  The Court further observed that nothing within the deed of trust's definition of borrower or grantor indicated that Ms. Ethridge held an interest in, or intended to convey any interest in, that property, regardless of Ms. Ethridge's signature on the deed of trust.  Id. at 132.  The Court found that "[t]he party in whom the title is

25

vested, must use appropriate words to convey the estate. Signing, sealing, and acknowledging a deed by the wife in which her husband is the only grantor, will not convey her estate." Id. (quoting Bradley, 4 S.W. at 428) (cleaned up). The Ethridge Court reasoned that, because Mr. Ethridge and Ms. Ethridge owned their property as tenants by the entirety, the deed of trust's failure to define Ms. Ethridge as a borrower or grantor and failure to contain clear language reflecting that Ms. Ethridge intended to convey her interest in the property meant that the documents failed to convey her interest in the property and to create a valid lien, regardless of Ms. Ethridge's signature and the notarization of the deed of trust. Id.

Missouri case law since Ethridge applies the same reasoning. Courts find that a deed of trust's failure to identify both spouses as grantor or borrower results in an invalid lien, unenforceable against the unidentified spouse. See Fed. Nat. Mortg. Ass'n v. Pace, 415 S.W.3d 697, 703 (Mo. Ct. App. 2013) (holding that a deed of trust that only identifies one spouse as the grantor and lacks any reference to the other spouse or indication that the unidentified spouse was a borrower or grantor fails to convey the unidentified spouse's property interest); US Bank Nat. Ass'n v. Cox, 341 S.W.3d 846, 855 (Mo. Ct. App. 2011) (stating that a deed of trust identifying only one spouse without referring to or indicating that the other spouse consented to the agreement cannot be enforced against the unidentified spouse). Courts applying Ethridge to a deed of trust consistently require a deed of trust to identify both spouses as "grantor" or "borrower", bear both spouses' signatures, and contain covenants of title indicating that both husband and wife intended to convey their interest in property. Pace, 415 S.W.3d at 703; Cox, 341 S.W.3d at 855.

This Case presents a different situation. Here, the Debtor argues that the absence of her signature on the Note renders the Deed of Trust's definition of "Paul Dorlaque and [the Debtor], as husband and wife" as "Grantor" ineffective to convey the Debtor's interest in the Property. In

26

response, the Trust cites to and argues that the Missouri Court of Appeals' opinion in Richard v. Wells Fargo Bank, N.A. addresses a factually similar situation that governs this Court's analysis. Doc. No. 34.

In Richard, Mr. Richard and Ms. Richard refinanced property they owned as tenants by the entirety using a promissory note and deed of trust prepared by their lender. Richard, 418 S.W.3d at 471-73. The promissory note defined Mr. Richard as the sole borrower, bore only Mr. Richard's signature, and was executed on the same day as the deed of trust. Id. at 471. The deed of trust defined the "Borrower" as "Paul D. Richard and Elizabeth M. Richard, Husband and Wife", included language indicating that the "Borrower" conveyed their interest in the property, and it specifically referenced and incorporated the terms of the promissory note signed by only Mr. Richard. Id. The deed of trust's signature block contained the preprinted word "Borrower" adjacent to the signature lines that contained both Mr. Richard's and Ms. Richard's signatures. Id. Despite the general identification of Ms. Richard as a borrower at the start of the document, the last page of the deed of trust also contained the preprinted word "Non-Borrower" alongside Ms. Richard's preprinted name, followed by a notarial acknowledgment. Id. After Mr. Richard's death, the lender sought to enforce the promissory note and deed of trust. Id. at 471. Ms. Richard filed suit, arguing the deed of trust failed to convey her interest in the property pursuant to Ethridge, but the trial court found in favor of the lender at summary judgment. Id. at 471-72. Ms. Richard appealed, arguing that the deed of trust improperly defined her as both borrower and nonborrower, which created an ambiguity due to the inaccurate definition. Id.

On appeal, the Missouri Court Appeals began by framing the question before it as whether the deed of trust was enforceable, not whether the promissory note was enforceable against Ms. Richard. Id. at 473. The Richard court then determined that, despite the absence of Ms. Richard's

signature on the promissory note, the deed of trust's explicit definition of both Mr. Richard and Ms. Richard as "Borrower", with both Mr. Richard's and Ms. Richard's signatures on the deed of trust next to the preprinted word "Borrower" and appropriate conveyance language, effectively pledged both spouses' interest in the property.  Id.  The court also noted that a joint and several liability clause within the deed of trust provided a further indication that Ms. Richard intended to convey her interest in the property.  Richard, 418 S.W.3d at 474; see also Rouse v. Wells Fargo Bank, N.A., No. 08–30823, 2009 WL 3335027, at *2 (Bankr. W.D. Mo. Oct. 14, 2009) (interpreting the same contractual language as in Richard).  The Richard court observed that, absent the errant and unsigned reference to Ms. Richard as "Non-Borrower" on the last page of the deed of trust, the entire document clearly defined her as "Borrower" and reflected an unambiguous intent to pledge her interest in the property as security for the promissory note.  Richard, 418 S.W.3d at 474.

Notably, Missouri statutory authority parallels the requirements imposed by Ethridge and Richard.  Missouri statutes provide that a valid instrument conveying land or an interest in land must contain the signatures of the conveying parties, identify the conveying parties as spouses if they own property together, contain proper language of conveyance, contain a valid acknowledgment, and be properly recorded.  MO. REV. STAT. §§ 442.030, 442.130, 442.210, 442.420.

Here, the Deed of Trust identifies and defines Paul Dorlaque and the Debtor, together, as the "Grantor"; identifies them as spouses; contains language stating that Paul Dorlaque and the Debtor "sell[], convey[] and warrant[]" their interest in the Property; includes the preprinted label of "**Grantor**" next to Paul Dorlaque's and the Debtor's signatures; and bears a notarial acknowledgment by Mr. Venverloh averring that Paul Dorlaque and the Debtor signed the Deed

of Trust and proved they were the people subscribing the Deed of Trust. Stip. Ex. 4 at 3, 11 (emphasis in original). Additionally, Stipulated Exhibit 4 reflects that the Trust recorded the Deed of Trust on August 14, 2018. Id. at 1-2. Thus the Deed of Trust complies not only with Ethridge and Richard, but also with Missouri statute, evidencing that the Debtor conveyed her interest in the Property to the Trust, regardless of whether she is, or became liable, on the Note. See generally Ethridge, 226 S.W.3d at 131-33, Richard, 418 S.W.3d at 473.

Despite language reflecting a valid conveyance, the Debtor argues that the Deed of Trust includes an inaccurate definition of "Grantor" because it references the Note and provides that "[f]or and in consideration of the debt referred to below, **which is owed by Grantor to Grantee**, Grantor grants, sells, conveys and warrants . . ." their interest in the Property to the Trust. Stip. Ex. 4 at 3 (emphasis added). The Debtor believes the document's reference to the Note, and the lack of the Debtor's personal liability to the Trust under the Note, makes the Deed of Trust's definition of the Debtor as "Grantor" ineffective and renders the Deed of Trust unenforceable under Ethridge. Doc. No. 37 at 6-7. This Court's review of the Deed of Trust indicates that nothing within the second paragraph of that document containing the language of conveyance modifies the definition of "Grantor" found in its first paragraph. See Stip. Ex. 4 at 3. The Deed of Trust's plain language defines "Paul Dorlaque and the Deborah Dorlaque, husband and wife," as "Grantor" under that instrument, Id., and subsequent references to the Note, obligations under the Note, and the terms of the Note fail to modify the Deed of Trust's inclusion of the Debtor as a grantor under its terms. See Stip. Ex. 4 at 3.

In addition, a deed of trust and promissory note may define their executing parties differently and documents need not both use the same term of "grantor" or "borrower", so long as each document sufficiently identifies the role of the parties to it. Johnson, 470 S.W.3d at 759; see

29

also Pace, 415 S.W.3d at 704 (recognizing that a deed of trust and promissory note may define the executing party as either grantor or borrower, interchangeably).  Moreover, Missouri law permits a deed of trust to incorporate the terms of another document—including a promissory note—through specific reference to that document and Missouri law does not require that a deed of trust reiterate the terms of a referenced promissory note.  In re Knigge, 479 B.R. 500, 504 (B.A.P. 8th Cir. 2012) (applying Missouri law); see, e.g., Sabatino v. LaSalle Bank, N.A., 96 S.W.3d 113, 118 (Mo. Ct. App. 2003) ("Matters incorporated into a contract by reference are as much part of the contract as if they had been set out in the contract in *haec verba*.") (internal quotation omitted); Engle v. Worth Cnty., 213 S.W. 70, 73 (Mo. 1919) (holding that reference to another document in a deed of trust requires the other document's terms be read into the deed of trust).  However, this Court has not found any Missouri case that imposes personal liability based on a referenced but unsigned promissory note, and that absence suggests that incorporation through reference to a promissory note generally fails to expose the nonsigning party to personal liability.  See generally Richard, 418 S.W.3d at 474 (finding a deed of trust enforceable without finding the referenced promissory note enforceable).  Accordingly, Deed of Trust's incorporation of the terms of the Note fails to render the Deed of Trust unenforceable, but that same incorporation permits enforcement of the Note's operative terms without imposing personal liability under the Note on the Debtor.

Beyond the incorporation issue, the Debtor appears to argue that because she never incurred personal liability on the Note, she never conveyed her interest to the Property.  Precedent establishes that a grantor's signature on a deed of trust without a signature on a promissory note creates a lien on the subject property securing repayment, but fails to expose the nonsigning party to personal liability on the promissory note.  See generally Cox, 341 S.W.3d at 853; see, e.g., R.L. Sweet Lumber Co. v. E.L. Lane, Inc., 513 S.W.2d 365, 368 (Mo. banc 1974) (holding that a deed

of trust given to secure payment of a debt creates a lien and not personal liability*)*; State Ins. Co. v. Irwin*, 67 Mo. App. 90 (1896) (holding that one who acquired property subject to a deed of trust does not assume personal liability to pay underlying debt). Even if a lender cannot enforce a promissory note against an individual, "a deed of trust represents the right to have the debt, if not otherwise paid, satisfied out of the land." R.L. Sweet Lumber, 513 S.W.2d at 368. Simply put, a deed of trust pledges specific property as security for a debt, but the grantor does not incur any personal liability for that debt. Cent. Bank v. Perry, 427 S.W.3d 285, 288 (Mo. Ct. App. 2014) (citing Bob DeGeorge Assocs., Inc. v. Hawthorn Bank, 377 S.W.3d 592, 597 (Mo. banc 2012)). This means that the Debtor did not become liable under the Note, but that absence of any liability fails to render the Deed of Trust unenforceable.

Here, the Deed of Trust plainly identified Paul Dorlaque and the Debtor as husband and wife, and as the "Grantor" who conveyed their interest to the Trust, and it bears both their signatures. Stip. Ex. 4 at 3, 12. Under Missouri law, the Deed of Trust constitutes a valid instrument and conveyed the Debtor's interest in the Property to the Trust, regardless of her lack of personal liability on the Note. Despite the Debtor's arguments to the contrary, the Deed of Trust clearly indicates the Debtor's intent to convey her interest in the Property and that intent, coupled with the Deed of Trust's compliance with statutory requirements, created a valid and enforceable lien against the Property as security for the Note.

## D. Reasonable Attorney's Fees

Having determined that the Deed of Trust stands enforceable against the Debtor, this Court now addresses the Debtor's arguments that the Trust's pre-petition attorney's fees and costs are unenforceable and unreasonable. See D.E. 11/8/23, 2/14/24; Doc. No. 37. The Debtor argues that the Deed of Trust's specific language does not permit recovery of attorney's fees relating to the

Trust's efforts to foreclose on the Property, Doc. No. 37, and that the Trust requests unreasonable attorney's fees because those fees exceed the applicable lodestar calculation amount of $1,900.00 as provided for by mortgage purchaser and guarantor Fannie Mae's servicing guidelines for a Missouri foreclosure.  Id. at 6-7; see also Doc. Nos. 20 at 9, 23 at 7-8.  The Trust responds that the Deed of Trust and the Note permit the recovery of its attorney's fees and that its fees are reasonable for the services rendered.  Doc. No. 34.  Because the Trust failed to attach the documentary support for its attorney's fees to its claim, see Claim No. 5-4, that portion of the Trust's claim does not receive prima facie validity and the Trust bears the burden to prove its entitlement to pre-petition attorney's fees.  FED. R. BANKR. P. 3001(c)(2)(A) (requiring that a claim identify interest, fees, expenses, or other pre-petition charges with an itemized statement of the interest, fees, expenses, or charges).

Section 506(b) of the Bankruptcy Code permits an oversecured creditor to recover reasonable fees, costs, and charges provided for in the agreement giving rise to its claim.  11 U.S.C. § 506(b); In re White, 260 B.R. 870, 880 (B.A.P. 8th Cir. 2001).  To recover attorney's fees related to its claim, a creditor must establish that it is oversecured in excess of its requested fees, the fees are reasonable, and the agreement underlying the claim provides for attorney's fees.  In re White, 260 B.R. at 880.  However, section 506(b) only applies to post-petition attorney's fees and costs; instead, state law governs the inquiry into pre-petition attorney's fees.  In re Apex Oil Co., 297 F.3d 712, 717 (8th Cir. 2002); In re Woods Auto Gallery, Inc., 379 B.R. 875, 883 (Bankr. W.D. Mo. 2007); see generally Travelers, 549 U.S. at 452 (observing that allowance or disallowance of a contractual claim for attorney's fees requires a determination that those fees are enforceable under state law).

Missouri follows the American Rule and requires each party to bear its own attorney's fees unless a statute or a contract underlying the dispute permits the prevailing party to recover its reasonable attorney's fees. Woods Auto Gallery, 379 B.R. at 884 (collecting cases) (explaining that case law and Missouri public policy contain an implicit requirement that attorney's fees be reasonable). Trial courts, including bankruptcy courts, generally comprise experts on fees due to their familiarity with the issues presented in a case and the character of services rendered, and those courts may determine the reasonableness of attorney's fees based upon the evidence before them. See Wilson v. City of Kansas City, 598 S.W.3d 888, 896 (Mo. banc 2020); Woods Auto Gallery, 379 B.R. at 884. If a contract provides for the payment of attorney's fees incurred enforcing its provisions, the trial court must comply with the contract's plain terms and award only those reasonable attorney's fees specifically provided for by the contract's language. Arrowhead Lake Ests. Homeowners Ass'n, Inc. v. Aggarwal, 624 S.W.3d 165, 168 (Mo. banc 2021); Oliver v. Ford Motor Credit Co., LLC, 437 S.W.3d 352, 366 (Mo. Ct. App. 2014); see Jacobson Warehouse Co. v. Schnuck Markets, Inc., 13 F.4th 659, 680 (8th Cir. 2021) (applying Missouri law). Moreover, a contractual right to recover attorney's fees extends to both sums paid and obligations incurred for the services rendered to enforce a contract. See Brooke Drywall, Inc. v. Bldg. Constr. Enters., Inc., 361 S.W.3d 22, 28 (Mo. Ct. App. 2011); Miller-Stauch Constr. Co. v. Williams-Bungart Elec., Inc., 959 S.W.2d 490, 495 (Mo. Ct. App. 1998).

The party requesting attorney's fees bears the burden of proving that the contract at issue permits recovery of attorney's fees for the services rendered. Oliver, 437 S.W.3d at 366; see generally Weitz Co. v. MH Washington, 631 F.3d 510, 535 (8th Cir. 2011) (explaining that awarding reasonable attorney's fees requires submission of records describing the cost, nature, and time expended by an attorney). Moreover, absent specific evidence regarding the work performed,

33

a court cannot award attorney's fees or determine whether the contract provided for the billed services.  See Clean Uniform Co. St. Louis v. Magic Touch Cleaning, Inc., 300 S.W.3d 602, 612 (Mo. Ct. App. 2009).  After receiving evidence demonstrating an entitlement to attorney's fees, a court determines the reasonableness of those fees by examining the lodestar calculation, by calculating the number of hours reasonably billed multiplied and a reasonable hourly rate for those services.  Wilson, 598 S.W.3d at 896.

### 1.    Contractual Right to Attorney's Fees

This Court begins its inquiry into the reasonableness of the Trust's attorney's fees by examining whether the Deed of Trust permits the recovery of attorney's fees.  The Deed of Trust contains one applicable provision allowing recovery of attorney's fees.  Stip. Ex. 4, ¶ 7.  Paragraph 7 of the Deed of Trust provides:

> If (a) Grantor fails to perform the covenants contained in this Deed of Trust, or (b) any action or proceeding is commenced which affects the Property or the lien of this Deed of Trust, including without limitation proceedings in eminent domain, insolvency, city ordinance enforcement or bankruptcy, then at Grantee's option Grantee may make such appearances, disburse such amounts and take such actions as Grantee deems necessary to protect Grantee's interest. These actions may include, without limitation, the performance of any act required of Grantee under this Deed of Trust, the making of payments under any other encumbrances, the settling and payment of any claims which might affect the Property, the redemption of the Property from any tax sales or other foreclosures, payment of attorney's fees, and entry upon the Property to make repairs. Any amounts paid by Grantee, with interest at the rate stated in the Promissory Note, shall become additional indebtedness secured by this Deed of Trust . . .

Stip. Ex. 4 at 5.

The Stipulated Facts reveal that the Debtor failed to pay the 2021 and 2022 real estate taxes due on the Property, Doc. No. 32 at ¶ 9, even though the Deed of Trust required that the Debtor, as grantor, pay those taxes.  See Stip. Ex. 4 at 3, ¶ 2 ("Grantor covenants . . . to timely pay all general and special taxes, assessments, and other charges that may be levied or assessed upon the

Property[.]").  This failure to comply with the Deed of Trust's covenants permitted the Trust to take any action it deemed necessary to protect its interest in the Property, "includ[ing], without limitation . . . payment of attorney's fees[.]"  Stip. Ex. 4 at 5.  Further, the Trustee testified at the November 8 Hearing that he believed it was necessary to foreclose on the Deed of Trust to protect the Trust's interest in the Property.  D.E. 11/8/23.  Thus, the Deed of Trust provides for recovery of the costs incurred in an action to protect the Trust's interest, including attorney's fees, and those amounts increase the debt against the Property.  Stip. Ex. 4 at 7, ¶ 7.

The Note provides that "Maker, on demand from Holder, shall pay to Holder all costs and expenses including reasonable attorney fees and court costs, incurred or paid by Holder in connection with (i) enforcing or attempting to enforce any of Holder's rights and remedies . . . and (ii) collecting amounts due under this Note."  Stip. Ex. 2 at 1.  Though the Note remains unenforceable against the Debtor personally, the Deed of Trust secures amounts due under the Note with the Property as collateral, which permits collection of the balance due on the Note against the Property.  See Nat'l Historic Soul Jazz Blues Walker Found. v. AltCap, 681 S.W.3d 202, 212 (Mo. Ct. App. 2023) (explaining that a valid deed of trust may be foreclosed to repay a promissory note's indebtedness, regardless of the absence of personal liability on that promissory note).  The Note clearly provides for recovery of costs and expenses incurred by the Trust while enforcing or attempting to enforce or collect upon the Note.  This Court finds that both the Deed of Trust and the Note create a contractual right for the Trust to recover its fees incurred in recovering the amounts due to the Trust from the Property but not the Debtor.

### 2.    Reasonableness of Attorney's Fees

In other circumstances, this Court would address the lodestar calculation and the reasonableness of the Trust's claim for pre-petition attorney's fees.  However, this Court cannot

evaluate the reasonableness of the Trust's claim for attorney's fees or the merits of any arguments in support of or opposition to the Trust's claim because this Court lacks any evidence supporting the amount of pre-petition attorney's fees included in the Third Amended Claim.

Review of the record in this Case reflects that this Court never admitted the Trust's Exhibit 12, nor any business record affidavit, invoices, or other documentary support for the Trust's pre-petition attorney fee amounts, at the November 8 Hearing or at the various status hearings preceding the February 14 Hearing.  See D.E. 11/8/23, 1/17/24, 2/14/24.  On November 27, 2023, the Trust filed Trust's Exhibit 12 on the docket in this Case.  Doc. No. 53.  That document purports to contain a redacted invoice of the Trust's pre-petition attorney's fees.  Id.  The Trust subsequently filed the Attorney Fee Response, including what appears to be a business record affidavit and copy of the redacted invoices comprising Trust's Exhibit 12 in an effort to address the Debtor's arguments in opposition.  See Doc. No. 65, Ex. B.

This Court held the February 14 Hearing to permit the Trust to provide evidence in support of its claim for attorney's fees, but, beyond amending its claim, the Trust offered no evidence at that hearing and failed to request admission of the Trust's Exhibit 12 onto the evidentiary record.  D.E. 2/14/24.  At hearing, the Trust stated that it believed the Trust's Exhibit 12 had been admitted onto the record during a previous hearing, which the Debtor advised was inaccurate and evoked no further comment or action by the Trust.  Id.  The mere filing of a document on this Court's docket fails to convert that document into evidence considered in a disputed matter.  See Summit Cmty. Bank v. David, 629 B.R. 804, 812-13 (E.D. Va. 2021) (explaining that a bankruptcy court cannot consider a document not admitted into evidence to rule on a claim objection); see, e.g., In re DePugh, 409 B.R. 84, 109–10 (Bankr. S.D. Tex. 2009) ("Documents attached to legal briefs, or documents which are merely filed on the court's docket record, do not constitute evidence

concerning a matter before the court unless those documents are specifically made a part of an evidentiary record applicable to a particular proceeding."); In re Watson, 402 B.R. 294, 297 (Bankr. N.D. Ind. 2009) (explaining that, regardless of a document's admissibility, the failure to submit those documents as evidence prevents their consideration). The failure to offer a document into the evidentiary record at a contested hearing prevent that document from becoming evidence when filed on the docket. See DePugh, 409 B.R. 84, 109–10; see also Summit Cmty. Bank, 629 B.R. at 812-13 (explaining that a bankruptcy court cannot consider evidence not admitted during an evidentiary hearing).

As a result, the only evidence before this Court on the reasonableness of the Trust's attorney's fees is the Third Amended Claim, which merely identifies subtotaled amounts claimed by the Trust without including any information that would permit this Court to evaluate whether the amounts identified on the claim related to fee amounts recoverable under the Note or Deed of Trust. Further, the lack of any evidence substantiating the amount of the Trust's claim prevents this Court from evaluating the lodestar calculation or other factors affecting the reasonableness factors under applicable Missouri case law. Without evidence of fees of these types, this Court cannot find that the Trust satisfied its burden to demonstrate that it is entitled to recover the pre-petition fees and costs listed on the Third Amended Claim. Accordingly, this Court will disallow the portion of the Trust's Third Amended Claim comprising pre-petition attorney's fees and legal costs. See Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 21 (2000) (recognizing that "the burden of proof is an essential element of the claim itself," and that "one who asserts a claim [has] the burden of proof that normally comes with it").

     *E.*    *The "Allowed" Claim*

The Bankruptcy Code generally allows a claim against a debtor under section 502(a) unless the claim implicates one of the nine exceptions listed in section 502(b).  Travelers, 549 U.S. at 449.  Without addressing those portions of that statute inapplicable in this matter, section 502(b)(1) disallows any claim "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."  11 U.S.C. § 502(b)(1).  The Bankruptcy Code defines a "claim against the debtor" to include "a right to payment, or the right to an equitable remedy for breach of performance if such breach gives rise to a right to payment."  11 U.S.C. § 101(5).  Section 102(2) clarifies that the term "claim against the debtor" in the Bankruptcy Code includes claims against a debtor's property.  11 U.S.C. § 102(2).  As a result, the Bankruptcy Code's definition of creditor includes an entity that holds a right to payment from the debtor, but also an entity that holds a claim against the debtor's property despite the debtor's lack of personal liability on the debt underlying the claim. Johnson v. Home State Bank, 501 U.S. 78, 85 (1991); see generally Minnesota Housing Fin. Agency v. Schmidt (In re Schmidt), 765 F.3d 877, 881-82 (8th Cir. 2014) (discussing the elements to a secured claim); In re Fisette, 455 B.R. 177, 181-83 (B.A.P. 8th Cir. 2011) (discussing how the law of personal liability impacts a secured claim).  In other words, personal liability to a creditor or the lack thereof does not determine whether a creditor holds a claim against a debtor.

The Debtor overlooked section 502(b) in briefing and arguing this matter, but her contentions implicate the issue of personal liability because she focused much of her argument the fact that she did not sign the Note.  D.E. 11/8/23; Doc. No. 37.  Regardless, the Trust holds an enforceable security interest in the Property and Missouri law permits execution on property subject to a security interest, after the grantor defaults on its obligations under the deed of trust. See generally Bank of Missouri v. S. Creek Prop., LLC, 455 S.W.3d 47, 54 (Mo. Ct. App. 2014)

(observing that default under a deed of trust entitled the lender to foreclose on its interest). Consequently, the Trust holds a claim against the Debtor because the Trust possesses a right to repayment from the Property.  For the reasons previously discussed in this Opinion and Order, the Trust holds an "allowed" claim against the Property under section 502(a) for the principal and interest due under the Note and Deed of Trust but does not hold an allowed claim for attorney's fees and costs incurred prepetition.

That leaves this Court to calculate the amount of the Trust's allowed claim.  The Debtor argues that the Note required payment of only $16,750.00 and had a balance due of only $1,329.40 on the Petition Date.  Doc. No. 22 at 2.  However, the Note's unambiguous payment terms require monthly payments of $265.88 from June 1, 2018 through and including June 1, 2023, followed by a balloon payment on July 1, 2023 of any unpaid principal and interest then due for a total amount due of $42,065.41 as of May 15, 2018. Stip. Ex. 2 at 1.  The Trustee testified at the November 8 Hearing that the Debtor had made regular payments of principal and interest that had reduced the principal due under the Note to $39,219.18 as of the Petition Date.  D.E. 11/8/23.  Notably, the Third Amended Claim's payment history conflicted with the payment history contained in Trust's Exhibit 10, but the Trustee testified that the Trust sought a lower claimed amount than what he believed actually was due.  Id.  The Debtor provided no credible testimony or other evidence supporting a lower principal balance for the Third Amended Claim than the $39,219.18 described by the Trustee and so this Court cannot determine that the Debtor owed a different amount as of the Petition Date than the amount described in the Third Amended Claim.  Therefore, this Court will overrule the Debtor's Amended Claim Objection to the extent it seeks a determination that the balance due under the Note totaled $16,750.00 as of the Petition Date and overrule the request

that this Court determine that the balance due under the Note as of the Petition Date totaled $1,329.40. See Doc. No. 22 at 2.

The Third Amended Claim calculates the amount due the Trust as of the Petition Date as $41,654.82. Claim No. 5-4 at 2. The Third Amended Claim states that principal and interest due under the Note and secured by the Deed of Trust as of the Petition Date totaled $39,219.18. Claim No. 5-4 at 4-6. Official Form 410 attached to the Third Amended Claim, as well as the Trustee's testimony at the November 8 Hearing, assert that the amount of the debt comprising principal totaled $39,219.18. See D.E. 11/8/23; Claim No. 5-4 at 4-6. As addressed above, the Debtor failed to overcome the presumed validity of the Trust's claim for principal and interest under the Note and Deed of Trust, those documents stand valid under Missouri law, and the Debtor failed to present any evidence suggesting that a lesser amount of principal and interest was due as of the Petition Date. Thus, this Court will overrule the Amended Claim Objection, in part, and will allow the Trust's claim for principal and interest due under the Note and Deed of Trust in the amount of $39,219.18.

The Third Amended Claim also asserts a right to payment for pre-petition attorney's fees of $1,772.64 and pre-petition costs of $663.00 comprising a total of $2,435.64. Claim No. 5-4 at 4-6. The Trust bore the initial burden to prove evidence to support this amount, but failed to meet that burden, so that portion of the Trust's claim did not receive a presumption of validity. Moreover, once the Debtor filed the Amended Claim Objection, the Trust bore the burden of proving the enforceability of its claim for pre-petition attorney's fees under Missouri law, but the Trust failed to provide evidence to support the amount of its attorney's fee claim or the reasonableness of that claim. Therefore, this Court will sustain the Amended Claim Objection, in part, and disallow the portion of the Trust's Third Amended Claim in the amount of $2,435.64 for

pre-petition attorney's fees and costs because the Trust failed to meet its burden of proving its right to payment of that portion of its claim.

### V. Conclusion

Having determined that Paul Dorlaque's signature on Note is valid, that the Note's payment terms are unambiguous, that the Deed of Trust creates an enforceable lien against the Property, and that the Trust permits recovery of attorney's fees and costs, but that the that the pre-petition attorney's fees and costs listed on the Trust's Third Amended Proof of Claim are not allowable, this Court

ORDERS that the Debtor's Amended Objection to Claim is **OVERRULED IN PART** and **SUSTAINED IN PART**. Specifically, this Court overrules the Debtor's Amended Claim Objection, Doc. No. 22, insofar as it seeks a determination that Paul Dorlaque failed to sign the Note, that the Note required payment of only $16,750.00, that the balance due under the Note on the Petition Date totaled $1,329.40, and that the Trust holds an unenforceable claim against the Property. This Court sustains the Debtor's Amended Objection to Claim to the extent it argues that the $2,435.64 in pre-petition attorney's fees and costs claimed by the Trust comprise an unreasonable amount. This Court further

ORDERS that Claim Number 5-4 is allowed as a secured claim in the total amount of $39,219.18 in principal as of the Petition Date. No pre-petition attorney's fees and legal costs are allowed to the Trust. This Court further and finally

ORDERS that all other relief requested in Deborah Dorlaque's Amended Claim Objection is **DENIED**.

DATED: February 28, 2024
St. Louis, Missouri
jah

BONNIE L. CLAIR
Chief United States Bankruptcy Judge

Copies to:

**Deborah L. Dorlaque**
2819 Angelo Ave.
Saint Louis, MO 63114
**Debtor**

**Angela Redden-Jansen**
3350 Greenwood Blvd.
Maplewood, MO 63143
**Debtor's Counsel**

**Emily Cantwell**
7701 Forsyth Blvd.
Suite 500
Clayton, MO 63105
**Counsel for Trust**

**Rhett Buchmiller**
2345 Grand Blvd.
Suite 220
Kansas City, MO 64108
**Counsel for Trust**

**Ben Struby**
2345 Grand Blvd.
Suite 220
Kansas City, MO 64108
**Counsel for Trust**

**Diana S. Daugherty**
P. O. Box 430908
St. Louis, MO 63143
**Chapter 13 Trustee**

**Office of U.S. Trustee**
111 S. Tenth St., Suite 6.353
Saint Louis, MO 63102
**US Trustee**

All parties entitled to notice.